[Cite as *State v. McGlinch*, **2019-Ohio-1380.**]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**DARKE COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2017-CA-10 |
| | : | |
| v. | : | Trial Court Case No. 2017-TRC-001- |
| | : | 1163 |
| BARBARA L. MCGLINCH | : | |
| | : | (Criminal Appeal from |
| Defendant-Appellant | : | Municipal Court) |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 12th day of April, 2019.

. . . . . . . . . .

JESSE J. GREEN, Atty. Reg. No. 0040265, Darke County Prosecutor's Office, Appellate Division, 504 S. Broadway, Greenville, Ohio 45331
    Attorney for Plaintiff-Appellee

THOMAS M. KOLLIN, Atty. Reg. No. 0066964, 3725 Pentagon Boulevard, Suite 270, Beavercreek, Ohio 45431
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FROELICH, J.

**{¶ 1}** After the trial court denied her motion to suppress, Barbara L. McGlinch pled no contest in the Darke County Municipal Court to operating a vehicle under the influence of drugs and/or alcohol ("OVI"), in violation of R.C. 4511.19(A)(1)(e), a first-degree misdemeanor.[1]  The trial court found her guilty and sentenced her accordingly.

**{¶ 2}** McGlinch appeals from her conviction, claiming the trial court erred in denying her motion to suppress and that the trial court failed to comply with Traf.R.10 in accepting her plea.  We conclude that the trial court did not err in overruling the motion to suppress, but that the trial court failed to comply with Traf.R. 10's requirement to inform McGlinch of the effect of her no contest plea.  Accordingly, the trial court's judgment will be reversed, and the matter will be remanded for further proceedings.

### I. Factual and Procedural History

**{¶ 3}** At approximately 10:00 p.m. on June 10, 2017, Officer Jason Penny of the Versailles Police Department stopped a vehicle driven by McGlinch for driving left of center.  During the stop, McGlinch stated that her license was suspended and that she had consumed four or five beers.  After speaking with McGlinch and with McGlinch's consent, the officer performed field sobriety tests.  Based on McGlinch's performance on those tests, Officer Penny arrested McGlinch for OVI.  The officer completed a citation for driving left of center (R.C. 4511.25(A)), failure to reinstate (R.C. 4510.21(A)), and OVI

---

[1] The trial court's judgment entry refers to McGlinch's offense as an unclassified misdemeanor.  However, at the time of the offense (June 2017), a violation of R.C. 4511.19(A)(1)(e), as a first offense within ten years, was a misdemeanor of the first degree.  R.C. 4511.19(G)(1)(a).  An OVI was an unclassified misdemeanor if it was the offender's third OVI within ten years.  R.C. 4511.19(G)(1)(c).

in violation of R.C. 4511.19(A)(1)(a). McGlinch provided a urine sample to law enforcement.

{¶ 4} McGlinch pled not guilty and requested discovery, including any cruiser video. On July 18, 2017, McGlinch was charged by complaint with an additional count of OVI, in violation of R.C. 4511.19(A)(1)(e), due to the alcohol results (0.132 grams per 100 ml) for the urine sample she provided on June 10.

{¶ 5} The same day (July 18, 2017), McGlinch filed a motion to dismiss the charges due to Officer Penny's failure to preserve the portion of the cruiser video showing the alleged left-of-center traffic violations. McGlinch also separately moved to suppress the evidence against her. She claimed that (1) the stop was unlawful, (2) the field sobriety tests were administered without reasonable suspicion that she was under the influence of drugs or alcohol, (3) the horizontal gaze nystagmus test was administered without substantial compliance with the National Highway and Traffic Safety Administration (NHTSA) guidelines, (4) the walk and turn test was administered without substantial compliance with the NHTSA guidelines, (5) the one-leg stand test was administered without substantial compliance with the NHTSA guidelines, (6) her arrest was unlawful, (7) she was subjected to custodial interrogation without being informed of her *Miranda* rights, and (8) the chemical test was administered without substantial compliance with Ohio Department of Health regulations.

{¶ 6} On August 31, 2017, the trial court held a hearing on McGlinch's motions to suppress and to dismiss. The trial court subsequently denied the motion to dismiss and McGlinch's request for the officer's left-of-center observations to be excluded. As for the motion to suppress, the trial court overruled issues (1)-(6) and (8), and sustained the

motion as to issue (7) concerning statements McGlinch made.

{¶ 7} On October 4, 2017, McGlinch pled no contest to OVI, in violation of R.C. 4511.19(A)(1)(e), a first-degree misdemeanor. In exchange for the plea, the State dismissed the additional OVI charge (R.C. 4511.19(A)(1)(a)), and the charges for driving left of center and failure to reinstate her license.

{¶ 8} The trial court immediately sentenced McGlinch to 60 days in jail, 53 of which were suspended; McGlinch was required to serve 7 days in jail or 3 days in jail with 12 days of house arrest. As part of her suspended sentence, McGlinch was to have no violation of the law for one year. The court ordered McGlinch to pay a $650 fine and courts costs of $260.48; McGlinch was permitted to perform community service in lieu of the payment of the fine and costs. The trial court suspended McGlinch's driver's license for one year and indicated that 6 points would be assessed on her license. McGlinch asked the trial court to stay her sentence due to ongoing health concerns; the court denied the motion. A similar motion was denied in this court, but there is no indication in the record that McGlinch has served her sentence.

{¶ 9} McGlinch appeals from her conviction. McGlinch's original appellate counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), indicating that she found no non-frivolous issues for appeal. Upon our initial review, we found that at least one non-frivolous issue existed. Accordingly, we rejected the *Anders* brief and appointed new counsel for McGlinch.[2]

---

[2] Our decision also rejected the *Anders* brief on the basis that the record appeared to be incomplete. Specifically, the transcript of the August 31, 2017 hearing suggested that it was a partial transcript, which included the proceedings related to the motion to suppress, but did not include that proceedings related to the motion to dismiss. We stated that new counsel should supplement the record with any on-the-record proceedings that had not

{¶ 10} McGlinch, with new counsel, raises two assignments of error, challenging the court's decision on her motion to suppress and her plea. The State has not filed a responsive brief.

## II. Motion to Suppress

{¶ 11} In her first assignment of error, McGlinch claims that the trial court erred in overruling her motion to suppress, because the police officer lacked reasonable suspicion to stop her vehicle. McGlinch does not challenge any other portions of the trial court's suppression ruling.

{¶ 12} In ruling on a motion to suppress, the trial court "assumes the role of the trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate the credibility of the witnesses." *State v. Retherford*, 93 Ohio App.3d 586, 592, 639 N.E.2d 498 (2d Dist.1994); *State v. Knisley*, 2d Dist. Montgomery No. 22897, 2010-Ohio-116, ¶ 30. Accordingly, when we review suppression decisions, we must accept the trial court's findings of fact if they are supported by competent, credible evidence. *Retherford* at 592. "Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard." *Id.*

{¶ 13} The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Under *Terry*, police officers may briefly stop and/or temporarily detain individuals in order to investigate possible criminal activity if the officers have a reasonable, articulable suspicion that criminal activity may be afoot, including a

been transcribed. No additional transcripts have been filed.

minor traffic violation.  *Id.*; *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 7-8.

{¶ **14**} R.C. 4511.25, entitled "Lanes of travel upon roadways," provides, in part:

(A) Upon all roadways of sufficient width, a vehicle or trackless trolley shall be driven upon the right half of the roadway, except as follows:

(1) When overtaking and passing another vehicle proceeding in the same direction, or when making a left turn under the rules governing such movements [.]

(2) When an obstruction exists making it necessary to drive to the left of the center of the highway; provided, any person so doing shall yield the right of way to all vehicles traveling in the proper direction upon the unobstructed portion of the highway within such distance as to constitute an immediate hazard;

{¶ **15**} At the suppression hearing, Officer Penny[3] testified that, at approximately 10:00 p.m., he was in uniform and driving a marked cruiser when he was "stopped" by Chief Humphries and notified of a possible impaired driver.  Penny observed McGlinch drive in the middle of the roadway of South Pearl Street and then make a right-hand turn onto West Ward Street; neither of the roads had marked lanes.  Officer Penny next saw McGlinch turn left onto South West Street, "in which she shortcut the turn, went into the opposite lane of travel a little bit."  Penny explained that South West Street has no marked lanes, but there was a "stop bar"; the officer saw McGlinch go into the opposite

---

[3] The State presented additional witnesses whose testimony related to the collection of the urine sample and the testing of that sample.  Their testimony is not pertinent to the issue before us.

lane and cross the stop bar. Officer Penny testified that he initiated a traffic stop in the area of a nearby intersection.

{¶ 16} In her appellate brief, McGlinch states that South Pearl Street is a residential road, and she argues that it is not uncommon for cars to be parked on the street, making it necessary to drive in the center of the roadway. She asserts that the State failed to show that there was no obstruction making it necessary to drive left of center. She further argues that R.C. 4511.25 explicitly states that a vehicle is not required to be driven on the right side of the roadway when making a left turn.

{¶ 17} We find McGlinch's arguments unavailing. R.C. 4511.25(A) creates a statutory requirement that vehicles be driven upon the right half of the roadway, if the roadway is wide enough, subject to certain exceptions. In other contexts, we have held that exceptions to statutory requirements are affirmative defenses that must be raised by the defense, rather than elements of the offense that must be negated by the prosecution. *See Miamisburg v. Hanson*, 2016-Ohio-964, 49 N.E.3d 336, ¶ 13 (2d Dist.) (interpreting R.C. 3743.65, illegal possession of fireworks); *see also, e.g., State v. Dunham*, 4th Dist. Scioto No. 04CA2931, 2005-Ohio-3642, ¶ 45 (holding that whether the defendant possessed drugs pursuant to a lawful prescription was an affirmative defense); *State v. Washington*, 1st Dist. Hamilton No. C810917, 1982 WL 4799 (Oct. 27, 1982) (addressing exemption to carrying a concealed weapon statute).

{¶ 18} In this case, Officer Penny's testimony established that he observed McGlinch (1) failing to drive on the right half on the roadway while driving on South Pearl Street and (2) failing to make a proper left turn by entering into the lane of oncoming traffic, i.e., by crossing the stop bar on the road upon completing the left turn. There was

no evidence at the suppression hearing indicating whether there were any parked vehicles or other obstructions on the roadways at issue, but the State was not required to present evidence negating the exceptions to the general statutory requirement to drive on the right half of the roadway. Penny's observations created a reasonable suspicion that McGlinch had violated R.C. 4511.25(A). Accordingly, the trial court reasonably concluded that the officer was justified in stopping McGlinch for the suspected traffic violations.

{¶ 19} McGlinch's first assignment of error is overruled.

### III. Plea Hearing

{¶ 20} In her second assignment of error, McGlinch claims that the trial court erred in accepting her no contest plea, because the court failed to inform her of the effect of her no contest plea, as required by Traf.R. 10(D).

{¶ 21} "A judge's duty to a defendant before accepting his [or her] guilty or no contest plea is graduated according to the seriousness of the crime with which the defendant is charged." *State v. Watkins*, 99 Ohio St.3d 12, 2003-Ohio-2419, 788 N.E.2d 635, ¶ 25. McGlinch pled no contest to OVI, a first-degree misdemeanor, which was punishable by up to 6 months in jail. *See* R.C. 4511.19(G). Therefore, McGlinch's OVI was a "petty offense," which means "an offense for which the penalty prescribed by law includes confinement for six months or less." Traf.R. 2(D).[4]

{¶ 22} When a defendant enters a guilty or no contest plea to a traffic

---

[4] The Ohio Traffic Rules apply in all Ohio courts in traffic cases. Traf.R. 1(A). A "traffic case" is "any proceeding, other than a proceeding resulting from a felony indictment, that involves one or more violations of a law, ordinance, or regulation governing the operation and use of vehicles, conduct of pedestrians in relation to vehicles, or weight, dimension, loads or equipment, or vehicles drawn or moved on highways and bridges." Traf.R. 2(A).

misdemeanor case involving a petty offense, the plea is governed by Traf.R. 10(D), which provides:

> In misdemeanor cases involving petty offenses, except those processed in a traffic violations bureau, the court may refuse to accept a plea of guilty or no contest and *shall not accept such pleas without first informing the defendant of the effect of the plea of guilty, no contest, and not guilty.* This information may be presented by general orientation or pronouncement.
>
> The counsel provisions of Criminal Rule 44(B), (C) and (D) apply to this subdivision.

(Emphasis added.) *Accord* Crim.R. 11(E) ("In misdemeanor cases involving petty offenses the court may refuse to accept a plea of guilty or no contest, and shall not accept such pleas without first informing the defendant of the effect of the plea of guilty, no contest, and not guilty.").

{¶ 23} Traf.R. 10(B), which defines "the effect of guilty or no contest pleas," states that "[t]he plea of no contest is not an admission of defendant's guilt, but is an admission of the truth of the facts alleged in the complaint and such plea or admission shall not be used against the defendant in any subsequent civil or criminal proceeding." Traf.R. 10(B)(2); *see also* Crim.R. 11(B)(2), which is identical to Traf.R. 10(B)(2).

{¶ 24} In *Watkins*, the Ohio Supreme Court clarified that in order to meet Traf.R. 10(D)'s requirement of "informing the defendant of the effect of the plea," the trial court need only inform the defendant of the information contained in Traf.R. 10(B). *Watkins*,99 Ohio St.3d 12, 2003-Ohio-2419, 788 N.E.2d 635, ¶ 28; *see State v. Darden*, 2d Dist.

Greene No. 2005 CA 109, 2006-Ohio-2908, ¶ 16. Moreover, a trial court is required to inform the defendant only of the effect of the specific plea being entered. *State v. Jones*, 116 Ohio St.3d 211, 2007-Ohio-6093, 877 N.E.2d 677, ¶ 20. The supreme court has further stated that the notification regarding the effect of the plea is not satisfied by statements relating to the maximum penalty and the defendant's constitutional rights. *See id.* at ¶ 22. Rather, "for a no contest plea, a defendant must be informed that the plea of no contest is not an admission of guilt but is an admission of the truth of the facts alleged in the complaint, and that the plea or admission shall not be used against the defendant in any subsequent civil or criminal proceeding." *Id.* at ¶ 23, citing Traf.R. 10(B)(2); Crim. R. 11(B)(2).

{¶ 25} McGlinch's plea hearing consisted of the following exchange:

THE COURT: * * * It is my understanding that Miss McGlinch is changing her plea to driving under the influence of alcohol under (A)(1)(e) section whereby the (A)(1)(a) section, the driving under suspension [sic], and the left of center [are] being dismissed by the State. [Defense counsel,] is that your understanding as well?

[DEFENSE COUNSEL]: Yes, Your Honor.

THE COURT: And has Ms. McGlinch been made aware of her rights that she would be waiving today by changing her plea to the remaining charge?

[DEFENSE COUNSEL]: Yes, Your Honor.

THE COURT: Has she also been made aware of the enhanceabilities of future violations if she would re-offend?

[DEFENSE COUNSEL]: Yes, Your Honor.

THE COURT: All right. And what plea is she now entering?

[DEFENSE COUNSEL]: No contest, Your Honor.

THE COURT: And do you wish to waive the explanation of circumstances for the stipulation of finding of guilt?

[DEFENSE COUNSEL]: Your Honor, given some of the strange procedure in this case with the amended citation, we would ask that those circumstances be read into the record.

THE COURT: All right. * * *

[Court locates most recent statement of facts in the record.]

THE COURT: Got it. All right, Miss McGlinch. Is it now your desire to change your plea from not guilty to no contest?

THE DEFENDANT: Yes, it is.

THE COURT: To one count of operating a motor vehicle while intoxicated.

THE DEFENDANT: Yes, it is.

THE COURT: Is anyone promising you anything or threatening you into changing that plea today?

THE DEFENDANT: No.

THE COURT: Are you doing so voluntarily and of your own free will?

THE DEFENDANT: Yes, I am.

THE COURT: All right. Ma'am, with that said, what plea do you now wish to enter?

THE DEFENDANT: No contest.

The trial court then read a lengthy statement of facts regarding the original stop and the

subsequent results of the testing of McGlinch's urine sample. Based upon that information, the court found McGlinch guilty of OVI in violation of R.C. 4511.19(A)(1)(e) and proceeded with sentencing.

{¶ 26} The record reflects that the trial court did not inform McGlinch of the effect of a no contest plea prior to accepting her plea. Although this information may be presented by general orientation or pronouncement, there is nothing in the record reflecting that McGlinch was informed of the effect of her no contest plea in either manner. Moreover, the record does not include a written plea agreement. Accordingly, the trial court failed to comply with Traf.R. 10(D) in accepting McGlinch's plea.

{¶ 27} We turn to whether McGlinch is required to demonstrate that she was prejudiced by the trial court's failure to comply with Traf.R. 10(D). In *State v. Griggs*, 103 Ohio St.3d 85, 2004-Ohio-4415, 814 N.E.2d 51, the Ohio Supreme Court held that the failure to inform a defendant of the effect of his or her guilty plea would not invalidate the plea unless the plea would not otherwise have been made. The court explained:

The right to be informed that a guilty plea is a complete admission of guilt is nonconstitutional and therefore is subject to review under a standard of substantial compliance. *State v. Nero*, 56 Ohio St.3d [106,] 107, 564 N.E.2d 474. Though failure to adequately inform a defendant of his constitutional rights would invalidate a guilty plea under a presumption that it was entered involuntarily and unknowingly, failure to comply with nonconstitutional rights will not invalidate a plea unless the defendant thereby suffered prejudice. *Id.* at 108, 564 N.E.2d 474. The test for prejudice is "whether the plea would have otherwise been made." *Id.*

Under the substantial-compliance standard, we review the totality of circumstances surrounding Griggs's plea and determine whether he subjectively understood that a guilty plea is a complete admission of guilt. *Id.*

*Griggs* at ¶ 12. Citing *Griggs*, the court again indicated in *Jones* that a defendant must establish prejudice in order to invalidate a guilty plea that was made without being informed of the effect of the plea. *See Jones,* 116 Ohio St.3d 211, 2007-Ohio-6093, 877 N.E.2d 677, at ¶ 52.

**{¶ 28}** However, since *Griggs* and *Jones*, the Ohio Supreme Court has held in felony cases that a defendant need not show prejudice in every case in which a trial court fails to substantially comply with Crim.R. 11's requirements concerning nonconstitutional rights. *See State v. Bishop*, Ohio Slip Opinion No. 2018-Ohio-5132, __ N.E.3d __; *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462; *State v. Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, 881 N.E.2d 1224. In these cases, which concerned the trial court's notification of the maximum penalty, the supreme court differentiated between a trial court's complete failure to comply with Crim.R. 11 and the court's partial compliance with the Rule. The supreme court recently stated in *Bishop*:

A trial court need only substantially comply with the nonconstitutional advisements listed in Crim.R. 11(C)(2)(a). [*State v.*] *Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, at ¶ 18. But "[w]hen the trial judge does not *substantially* comply with Crim.R. 11 in regard to a nonconstitutional right, reviewing courts must determine whether the trial court *partially* complied or *failed* to comply with the rule." (Emphasis sic.)

*Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, at ¶ 32. "If the trial judge partially complied, e.g., by mentioning mandatory postrelease control without explaining it, the plea may be vacated only if the defendant demonstrates a prejudicial effect." *Id.* But if the trial court completely failed to comply with the rule, the plea must be vacated. *Id.* Complete failure " 'to comply with the rule does not implicate an analysis of prejudice.' " *Id.*, quoting *State v. Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, 881 N.E.2d 1224, ¶ 22.

*Bishop* at ¶ 19.

{¶ 29} The Ohio Supreme Court has not expressly reconsidered whether a defendant must show prejudice when a trial court completely fails to notify the defendant of the effect of his or her plea, as required by Crim.R. 11 or Traf.R. 10. Nevertheless, it has implicitly done so by repeatedly stating, since *Griggs* and *Jones*, that when a trial court fails to substantially comply with the requirements regarding nonconstitutional rights, a showing of prejudice is required when the trial court has partially complied with the Rule, but not when the trial court has completely failed to comply; the supreme court's more recent holdings have not limited its revised standard to Civ.R. 11(C)(2)(a) only.

{¶ 30} We conclude that the bifurcated standard that applies when a trial court fails to substantially comply with the requirements for nonconstitutional rights applies to the requirement that the court notify the defendant of the effect of his or her plea. *Accord, e.g., State v. Gibson*, 5th Dist. Muskingum No. CT2017-0094, 2018-Ohio-4013 (appellant need not show prejudice where trial court completely failed to inform him of the effect of his no contest plea); *State v. Williams*, 6th Dist. Lucas No. L-17-1064, 2018-Ohio-1000,

¶ 5; *State v. Johnson*, 9th Dist. Summit No. 27550, 2016-Ohio-480, ¶ 7-8; *Cleveland v. Adams*, 8th Dist. Cuyahoga No. 97523, 2012-Ohio-1063. *But see State v. Carty*, 2018-Ohio-2739, 116 N.E.3d 862 (8th Dist.) (stating that, unlike other nonconstitutional aspects of Crim.R. 11(C)(2), a defendant who does not assert actual innocence is presumed to understand the effect of his or her plea).

{¶ 31} In this case, the trial court completely failed to comply with Traf.R. 10(D)'s requirement to inform McGlinch of the effect of her no contest plea prior to accepting the plea. Accordingly, the trial court erred in accepting McGlinch's no contest plea, and McGlinch was not required to demonstrate that the error was prejudicial.

{¶ 32} McGlinch's second assignment of error is sustained.

### IV. Conclusion

{¶ 33} The trial court's judgment will be reversed, and the matter will be remanded for further proceedings.

. . . . . . . . . . . .

WELBAUM, P.J. and DONOVAN, J., concur.

Copies mailed to:

Jesse J. Green
Thomas M. Kollin
Barbara L. McGlinch
Hon. Julie L. Monnin